**UNITED STATES of America**

v.

**Warren BROWN, et al.**

**Crim. No. 85–0342.**

United States District Court,
District of Columbia.

Feb. 19, 1986.

See also 823 F.2d 591.

Lewis Myers, Jr., Bates, Childs & Myers, Chicago, Ill., John W. Garland, Washington, D.C., for defendants.

John Stevens, J. Michael Hannon, Asst. U.S. Attys., Washington, D.C., for the Government.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

AUBREY E. ROBINSON, Jr., Chief Judge.

This matter comes before the Court on Defendants' Motion to Suppress Tangible Evidence and the government's Opposition thereto. Based on the memoranda of the parties, and testimony and argument having been heard on February 10, 1986, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

In the early morning hours of July 16, 1985, FBI Agents and Metropolitan Police Officers executed search and arrest warrants at two premises in Washington, D.C. —1218 Taylor Street, N.E., and 556 Varnum Street, N.W. Special Agent Richard LaGore of the Federal Bureau of Investigation was the lead agent at the Taylor Street address. There were several other FBI special agents and one uniformed Metropolitan Police Officer who approached the premises at approximately 6 o'clock a.m. Agent LaGore announced: "FBI, Police, open the door right now." The FBI Agents and the Metropolitan Police Officer were standing at the front door of the premises on an exterior front porch. Steven Jones, was asleep on the first floor of the premises and was awaken by the knock on the door. He got up from the couch on which he had been sleeping and peered through glass panes in the upper portion of the door. He then left the door and went upstairs in the premises. He was seen approaching the door by the agents and when he turned and left the door, they entered the premises through an open front window, and then proceeded to execute the search and arrest warrants they had in their possession. They announced their identity as FBI and Police Officers, but did not announce that they had a warrant before they entered the premises through the open window.

Special Agent Steven Sparks of the Federal Bureau of Investigation, was the lead agent of a 10 to 20 person team in the execution of the arrest and search warrants at the Varnum Street premises. At approximately 6 o'clock a.m. the agent and his team approached the front door of the Varnum Street premises, and announced from the front porch, just outside the door: "FBI, open the door, we have a search warrant." Mukallaf Abdullah was resting on a couch in a first floor room when the officers sought entrance. He had a conversation through an open screened window with Metropolitan Police Officer Frank Morgan. Morgan advised Agent Sparks "he's not going to open the door, he's walking away." Immediately, Agent Sparks ordered the door knocked down. When they entered the premises Mukallaf Abdullah was standing in a living area adjacent to the doorway approximately 10 to 15 feet from the front door.

## CONCLUSIONS OF LAW

In determining the validity of the searches in these cases, the applicable statute is 18 U.S.C. § 3109 which provides:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Defendants have moved to suppress all of the evidence seized during the execution of the search warrants at 556 Varnum Street, N.W., and 1318 Taylor Street, N.E., alleging that the police failed to comply with the above-quoted statute.

 With regard to the Varnum Street search, it is clear that the government complied with every word of the statute. Before forcing entry into the house, Special Agent Steven Sparks of the FBI announced his authority ("FBI") and purpose ("we have a search warrant"). He was then refused admission by Defendant Abdullah who began walking away from the door. In no way was this search improperly executed and Defendants motion shall be denied with respect to Varnum Street.

At Taylor Street, the legitimacy of the officer's behavior takes slightly more analysis. It is undisputed that FBI Special Agent Richard LaGore did not state the reason for the agents' presence at the residence. Instead, Special Agent LaGore announced: "FBI, Police, open the door right now." When Steven Jones peered through the glass panes in the door and then proceeded upstairs without opening it, the agents entered through the open front window.

 In this Circuit, even though the window was open, the agents "broke open" the window as that phrase is used in 18 U.S.C. § 3109. See *United States v. Harris*, 140 U.S.App.D.C. 270, 435 F.2d 74, 82 (1970) (citing *Keiningham v. United States*, 109 U.S.App.D.C. 272, 287 F.2d 126 (1960)) ("an entry without consent ordinarily amounts to a 'breaking' under the statute and requires that the officers first announce their purpose and authority.") Under some circumstances, this "breaking" without a statement of purpose would evidence a violation of the "knock and announce" statute and would require the return or suppression of the items wrongly seized. *In re: Search Warrant Dated July 4, 1977, etc.*, 667 F.2d 117, 136 (D.C. Cir.1981). Under circumstances such as those presented here, however, this Circuit and the United States Supreme Court have recognized that it is not in the interest of justice to require the evidence suppressed.

 In *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), the Court recognized that "there is little reason why those limited exceptions (to any possible constitutional rule relating to announcement and entry) might not also apply to § 3109, since they existed at common law, to which the statute is a codification." *Id.* at 591 n. 8, 88 S.Ct. at 1759, n. 8. Two exceptions to the "knock and announce" statute of which the Court was speaking are (1) situations where the persons within already know of the officers' authority and purpose, and (2) where those within, aware of the presence of someone outside, engage in activity which makes the officers reasonably believe they are trying to escape or destroy evidence. Both of these circumstances existed at Taylor Street. A reasonable interpretation of Jones' behavior when he looked out the door and headed upstairs was that he was well aware of the purpose of the agents' visit, was refusing them admittance, and was moving to destroy evidence. Like in *United States v. James*, 764 F.2d 885 (D.C. Cir.1985), "[t]o require the police (or the FBI) in these circumstances to announce that they are there to execute a search warrant would be to require a futile act. Compliance with section 3109 is unnecessary in such circumstances." *Id.* at 888 (citations omitted).

This case is factually similar to *James*. There, police officers broke down a door after they announced "Police, Narcotics" several times without obtaining any response and heard someone inside the house running down the back stairs. *Id.* at 887. At Taylor Street, the agents *saw* Jones go back through the house before they climbed in through the open window. (Although their means of entry was a "breaking" for purposes of § 3109, it is noteworthy that the agents chose the least intrusive means of quickly getting in and securing the property.) Like in *James*, it is not in the interest of justice to suppress the evidence seized during the execution of this valid search warrant.

In light of the foregoing Findings of Fact and Conclusions of Law, it is by the Court this 19th day of February, 1986,

ORDERED, that Defendants' Motion to Suppress Tangible Evidence is DENIED.